ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 0 6 2006

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TPI HOLDINGS, INC., and TRADER PUBLISHING COMPANY, ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. _____ |
| ) | |
| v. ) ) | **1:06-CV-1600** |
| WINFIELD DYCO HOLDINGS LTD, ) ) | **JTC** |
| Defendant. ) ) | |

## COMPLAINT

Plaintiffs TPI Holdings, Inc. and Trader Publishing Company (collectively "Trader") state their complaint against Defendant Winfield Dyco Holdings Ltd. ("Defendant") as follows:

### Nature of the Action

1.      This is an action at law and in equity for trademark infringement, cybersqatting, and unfair competition arising under the federal Lanham Act, codified as amended at 15 U.S.C. §§ 1051-1127, the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and the common law.

1

93612602

## Jurisdiction

2.      This Court has original and subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the case arises under the Lanham Act, 15 U.S.C. 1051 *et. seq.* and under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

3.      This Court has personal jurisdiction over the Defendant because, upon information and belief, Defendant is transacting business within this district, or has otherwise made purposeful contact with this district sufficient to permit the exercise of personal jurisdiction.

4.      Venue is proper in this district under 28 U.S.C. § 1391(d) because, upon information and belief, Defendant is an alien.

## Parties

5.      Plaintiff TPI Holdings, Inc. ("TPI") is a corporation organized under the laws of the State of Delaware with its principal place of business located in Atlanta, Georgia. TPI is the owner of the trademarks and registrations at issue in this lawsuit.

6.      Plaintiff Trader Publishing Company ("Trader Publishing") is a general partnership organized under the laws of the Commonwealth of Virginia with its principal place of business in Norfolk, Virginia. Trader Publishing is an affiliate of TPI and the licensee of the trademarks at issue in this lawsuit. TPI, Trader

2

Publishing, and their predecessors and affiliates are collectively hereinafter referred to as "Trader" or "Plaintiffs."

7. On information and belief, Defendant Winfield Dyco Holdings Ltd. ("Winfield" or "Defendant") is a limited company organized under the laws of British Columbia, a province of Canada, with its principle place of business at 13270 McCreight Road, Winfield, British Columbia, V4V1C7, Canada.

## FACTUAL BACKGROUND
### Trader's Trademark and Service Mark Rights

8. For more than thirty (30) years, Trader has adopted and used a family of trademarks using the term "TRADER" together with a vehicle term, such as "AUTO" or "TRUCK" (the "TRADER Marks").

9. From the beginning, Trader used the TRADER family of marks in connection with a number of different print publications offering classified advertising respecting different types of vehicles distributed throughout the United States. In the last ten years, in addition to the print publications, Trader has also offered classified advertising online in connection with the TRADER Marks.

10. Trader initiated use of TRADER formative marks in 1974, when it first began using AUTO TRADER in connection with print publications providing advertising and information about automobiles and services related to them. In 1976, Trader added BOAT TRADER magazines and in 1978, CYCLE TRADER

3

93612602

and AERO TRADER magazines, to its publications.  Over the years since then, Trader has adopted more than 20 additional TRADER formative marks, including the marks OLD CAR TRADER and RV TRADER, among others, and used them in connection with print publications featuring classified advertising distributed throughout the United States.

11.    Beginning in at least July, 1996, Trader extended use of its TRADER marks to provide advertising for others via an online electronic communications network.  Since that time Trader has featured its TRADER offerings on the Internet at multiple sites utilizing TRADER domain names and marks, including <autotrader.com>, <traderonline.com>, <boattrader.com>, <aerotrader.com>, <cycletrader.com>, <rvtraderonline.com>, and <oldcartraderonline.com>, among others.  True and correct print-outs of homepages for the sites reached through these domain names are attached as **Exhibits A** through **G**.

12.    Trader first used the RV TRADER mark at least as early as March 30, 1989 and has used the RV TRADER mark continuously since that time in connection with print publications, distributed throughout the United States, that provide advertising and information about trucks and goods and services related to them.  A true and correct copy of the front cover of a RV TRADER magazine is attached as **Exhibit H.**

4

13.    Beginning in late, 1996, Trader extended use of the RV TRADER mark to provide advertising and information about trucks and goods and services related to them via an online electronic communications network, featuring its offerings under the RV TRADER mark at its <rvtraderonline.com> website, as shown on the homepage of the website.

14.    Trader first used the OLD CAR TRADER mark at least as early as November 28, 1992 and has used the mark continuously since that time in connection with print publications, distributed throughout the United States, that provide advertising and information about cars and goods and services related to them. A true and correct copy of the front cover of an OLD CAR TRADER magazine is attached as **Exhibit I.**

15.    Trader is the owner of multiple federal registrations for its TRADER Marks, including registrations for its RV TRADER and OLD CAR TRADER marks as follows:

| Mark | Reg. No. | Reg. Date |
|------|----------|-----------|
| OLD CAR TRADER | 1911290 | 08/15/1995 |
| OLD CAR TRADER | 2348530 | 05/09/2000 |
| RV TRADER | 2294239 | 11/23/1999 |
| RV TRADER | 1822663 | 02/22/1994 |
| RV TRADERONLINE.COM | 2876679 | 08/24/2004 |

9361260.2

True and correct copies of print-outs from the U.S. Patent and Trademark Office online database showing these registrations are attached as **Exhibit J**. All of these registrations constitute prima facie evidence, and those that are incontestable constitute conclusive evidence, of Trader's exclusive right to use the marks in connection with the goods and services specified in the registrations.

16.    Since it first began using its TRADER marks, Trader has invested more than thirty years of continuous and substantial corporate efforts and millions of dollars to strengthen and promote the reliability of goods and services provided under, and identified by, its family of TRADER Marks. Trader, together with its affiliates, has spent more than $240 million in marketing in connection with its TRADER Marks in the last five years alone and has distributed over 245 million printed magazines under its TRADER family of marks in the last five years alone. Today, Trader's magazines are distributed in over 335,000 outlets, the largest paid and free distribution publication network across the United States.    TRADER magazines are so well-known that they have been chosen to appear in a number of movies, including "Meet the Parents," "Dumb and Dumber," and "Joe Dirt," as well as in television shows, including "CSI Miami."

17.    In addition, Trader's websites operated in connection with the TRADER marks are extremely popular, averaging almost 30 million visitors every

6

month. Moreover, Trader's <autotrader.com> website in particular has been the subject of extensive and widespread marketing and publicity and has become the Internet's leading auto classifieds marketplace and consumer information website. The Autotrader.com site aggregates in a single location more than 2.8 million vehicle listings from 40,000 dealers and 250,000 private owners, which provide the largest selection of vehicles attracting more than 11 million qualified buyers each month. Because of the substantial brand recognition that the site enjoys, J.D. Power & Associates has named <autotrader.com> as the number one site for used car classifieds, as well as placed it among the top online resource for new car buyers. In addition, Nielsen Net Ratings has routinely given the site top ratings positions.

18.   In short, as a result of Trader's substantial and continuous use and marketing of its TRADER Marks, the marks have become extremely well known to the public as exclusive source identifiers of Trader's high quality reliable services. The public has come to expect that marks used in connection with online advertising related to vehicles and that consist of the TRADER formative coupled with a vehicle term are associated or affiliated with, or authorized by, Trader.

## Defendant's Wrongful Acts

19.   Long after Trader's marks had become well known as source identifiers for Trader's vehicle advertising services, and after Trader had begun offering its

7

services online in connection with the TRADER marks, Defendant registered or otherwise acquired the domain names <oldcartrader.com> and <rvtrader.com> (the "Infringing Domain Names") in an attempt to trade on Trader's good will. A true and correct copy of the database search for <oldcartrader.com>, conducted on June 15, 2006, showing the Defendant as the owner, is attached as **Exhibit K**. A true and correct copy of the database search for <rvtrader.com>, conducted on June 15, 2006, showing Whois Privacy Protection Services as the registrant, is attached as **Exhibit L**. Previously, the Whois database showed Defendant as registrant, and on information and belief, Defendant remains the owner of <rvtrader.com>.

20.    On information and belief, before it began using RV TRADER.COM and OLD CARTRADER.COM as domain names or marks, Defendant had actual knowledge of Trader's rights and marks because of Trader's longstanding and extensive use of its family of TRADER Marks and because of its online presence. Defendant is also charged with knowledge of Trader's rights because of Trader's multiple trademark registrations. Defendant's <rvtrader.com> website attempts to compare Defendant's services to Trader's services, further evidencing Defendant's awareness of Trader's rights and marks. A true and correct copy of the webpage associated with Defendant's <rvtrader.com> website making such a comparison is attached as **Exhibit M**.

8

21.    On information and belief, Defendant acquired the registrations of the Infringing Domain Names with the intent of developing sites designed to compete with Trader and designed intentionally to attempt to attract for commercial gain Internet users to its sites by creating a likelihood of confusion with Trader's OLD CAR TRADER and RV TRADER marks, as to source, sponsorship, affiliation, or endorsement of Defendant's websites.

22.    Sometime after obtaining the Infringing Domain Names, Defendant began operating websites under them in direct competition with Trader. Currently, when an Internet user types in the Infringing Domain Names, he or she reaches websites that prominently display OLD CARTRADER.COM and RV TRADER.COM respectively. It is clear from the site homepages that Defendant uses OLD CARTRADER.COM and RV TRADER.COM as trademarks and not in any fair use sense simply to describe its offerings. Indeed, Defendant is not a "trader" of vehicles, but rather a seller of advertisements, and thus could not use the terms to describe its business. Defendant offers online advertising services to individual owners and dealers of various types of vehicles, namely RV's and old cars, thereby targeting the exact markets targeted by Trader. True and correct copies of the homepages associated with the <oldcartrader.com> and <rvtrader.com> websites are attached as **Exhibits N and O**, respectively.

9

23.    On information and belief, Defendant targets its services offered in connection with the Infringing Domain Names to dealers and individual buyers and sellers located throughout the United States, including Georgia.  In fact, Defendant specifically targets Georgia consumers and Georgia dealers, as shown by Defendant's listings of Georgia dealers and vehicles located in Georgia, set forth in listings pages from Defendant's rvtrader.com and oldcartrader.com sites attached as **Exhibits P** through **S**.  On information and belief, Defendant solicits through various means, including facsimile and email, dealers located throughout the United States, including Trader's customers, to post listings on Defendant's <rvtrader.com> website.  See attached **Exhibits T** and **U** for true and correct copies of facsimile and email solicitation sent to dealers soliciting their use of the <rvtrader.com> website. Despite having a Canadian origin, Defendant's <rvtrader.com> website lists only two Canadian dealers among over one hundred American dealers and Defendant's <oldcartrader.com> website lists only four Canadian dealers among over one hundred American dealers.  See attached **Exhibits V** and **W** for dealer lists from Defendant's <oldcartrader.com> and <rvtrader.com> websites, respectively.

24.    Defendant's OLD CAR TRADER.COM and RVTRADER.COM domain names and marks are confusingly similar to Trader's family of TRADER Marks because they are virtually identical to Trader's OLD CAR TRADER and RV

10

TRADER marks, with the non-distinctive .com addition. Defendant is offering the same services as Trader and targeting the same markets.

25.    Defendant is intentionally seeking to cause confusion and trade on Trader's goodwill in its OLD CAR TRADER and RV TRADER marks in the United States in order to reap underserved profits.

26.    Defendant's use of marks that are confusingly similar to Trader's TRADER marks is deceiving the public, causing irreparable harm and damage to Trader, and unlawfully generating income for Defendant.

## COUNT I
## FEDERAL TRADEMARK AND SERVICE MARK INFRINGEMENT

27.    Trader repeats and incorporates by reference the allegations contained in Paragraphs 1 through 27 as if set forth fully herein.

28.    Defendant's unauthorized use of confusingly similar imitations of Trader's registered TRADER Marks is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that its business and services are affiliated, connected, or associated with Trader or have the sponsorship, endorsement, or approval of Trader, all in violation of 15 U.S.C. § 1114.

29.    Defendant's unauthorized use of confusingly similar imitations of Trader's registered TRADER Marks, notwithstanding its constructive notice and

likely actual knowledge of Trader's ownership of the TRADER Marks, demonstrates an intentional, willful, and bad faith intent to trade on the goodwill of Trader's TRADER Marks and to cause confusion, deception, and mistake in the minds of Trader's customers and potential customers to the great and irreparable injury of Trader. Defendant has been unjustly enriched thereby.

30.    Because Defendant's infringing conduct is causing and is likely to cause substantial injury to the public and to Trader, Trader is entitled to injunctive relief, and to recover Defendant's trebled profits, Trader's costs, and Trader's reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

## COUNT II
## FEDERAL UNFAIR COMPETITION

31.    Trader repeats and incorporates by reference the allegations contained in Paragraphs 1 through 27 as if set forth fully herein.

32.    Defendant's use of confusingly similar imitations of Trader's TRADER Marks is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's online business is affiliated, connected, or associated with Trader or has the sponsorship, endorsement, or approval of Trader, in violation of 15 U.S.C. § 1125(a).

33.    Defendant's unauthorized use of confusingly similar imitations of Trader's electronic URL addresses, including its <oldcartraderonline.com> and

<rvtraderonline.com> domain names, among others, is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's online business is affiliated, connected, or associated with Trader or has the sponsorship, endorsement, or approval of Trader, in violation of 15 U.S.C. § 1125(a).

34.    Defendant's actions demonstrate an intentional, willful, and bad faith intent to trade on Trader's goodwill and to cause confusion, deception, and mistake in the minds of Trader's customers and potential customers by implying a nonexistent affiliation or relationship between Defendant and Trader to the great and irreparable injury of Trader.

35.    Because Defendant's unfair competition is causing and is likely to cause substantial injury to the public and to Trader, Trader is entitled to injunctive relief, and to recover Defendant's trebled profits, Trader's costs, and Trader's reasonable attorney's fees pursuant to 15 U.S.C. §§ 1116 and 1117.

## COUNT III
## VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

36.    Trader repeats and incorporates by reference the allegations contained in Paragraphs 1 through 27 as if set forth fully herein.

9361260.2

37.    By registering and using the Infringing Domain Names, Defendant has registered, trafficked in, and used domain names that are confusingly similar to Trader's TRADER Marks.

38.    Defendant registered the Infringing Domain Names and has used them with the intent to divert consumers form Trader's online locations to websites accessible under domain names that could harm the goodwill represented by Trader's TRADER Marks. Defendant registered the Infringing Domain Names with the bad faith intent to profit by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of the website. Defendant has demonstrated it ha a pattern of domain names that trade on marks of others by registering at least two domain names consisting exactly of Plaintiff's marks.

39.    Defendant's action constitutes cyberpiracy in violation of 15 U.S.C. § 1125(d).

40.    The unauthorized registration and use of the Infringing Domain Names has caused, and unless preliminarily and permanently enjoined, Defendant's registration and continued use of the Infringing Domain Names will continue to cause, irreparable injury to Trader and to the goodwill associated with Trader's TRADER Marks.

14

41.    Because Defendant's infringing conduct is causing and is likely to cause substantial injury to the public and to Trader, Trader is entitled to injunctive relief, and to recover either statutory damages under 15 U.S.C. § 1117(d) or Defendant's trebled profits, together with Trader's costs and Trader's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**COUNT IV**
**COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION**

42.    Trader repeats and incorporates by reference the allegations contained in Paragraphs 1 through 27 as if set forth fully herein.

43.    Defendant has used confusingly similar imitations of Trader's TRADER Marks with full knowledge of Trader's rights to those marks and with the willful and calculated purpose of trading upon Trader's established goodwill and business reputation, and in a manner calculated to imply false sponsorship of or approval by Trader, for the purpose of misleading and deceiving the public.

44.    Defendant has used confusingly similar imitations of Trader's electronic URL addresses, including its <oldcartraderonline.com> and <rvtraderonline.com> domain names, among others, with full knowledge of Trader's rights to those addresses, and with the willful and calculated purpose of trading upon Trader's established goodwill and business reputation, and in a manner calculated to imply

false sponsorship of or approval by Trader, for the purpose of misleading and deceiving the public.

45.    Defendant's conduct constitutes infringement of Trader's common law rights to the TRADER Marks and has damaged and will continue to damage irreparably Trader's goodwill and reputation unless restrained by this Court.

46.    Independent of its liability for common law infringement, Defendant also engaged in unfair competition under the common law of Georgia and the other states in which it has engaged in its activities through its attempted reliance on consumer mistakes and confusion, and its deliberate efforts to poach upon Trader's goodwill.

47.    Trader has no adequate remedy at law for remedying Defendant's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Trader prays:

1. That Defendant, its partners, agents, employees, and all persons in active concert or participation with Defendant, be permanently enjoined and restrained from:

(a)    using in the United States the domain names <oldcartrader.com> and <rvtrader.com> and the trademarks OLD CAR TRADER.COM and

16

RVTRADER.COM any trademark, company name, domain name or other designator that is confusingly similar to any of Plaintiffs' TRADER Marks;

(c)    passing off to the public in the United States that Defendant's business or products or services are those of or originate with Plaintiffs;

(d)    engaging in any other conduct in or affecting commerce in the United States which will cause, or is likely to cause, confusion, mistake, deception, or misunderstanding as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant's online business, products, or services with or by Plaintiffs; and

(e)    otherwise infringing upon any of the marks comprising Plaintiffs' Trader's TRADER Marks or unfairly competing with Trader in any manner whatsoever.

2. That Defendant be ordered to transfer and assign to Trader the <oldcartrader.com> and <rvtrader.com> domain names.

3. That an accounting be ordered and judgment be rendered against Defendant for all profits received from the sale, rental, or provision of products or services in the United States in connection with, or advertised or promoted in any

17

9361160.2

manner with the infringing <oldcartrader.com> and <rvtrader.com> domain names and confusingly similar imitations of Trader's TRADER Marks.

4. That the award of profits resulting from Defendant's infringement, unfair competition, and false designation of origin of products and services be trebled.

5. That Plaintiffs recover their actual damages.

6. That the award of actual damages from Defendant's infringement, unfair competition, and false designation of origin of products and services be trebled.

7. That Plaintiffs recover statutory damages under 15 U.S.C. § 1117(d) in the amount of $100,000 per infringing domain name.

8. That Defendant be required to deliver up for destruction all advertising and promotional materials, labels, cartons, brochures, business stationary, calling cards, information sheets, posters, signs, and any and all other printed or graphic materials of any type that Defendant uses for promotion and sale in the United States, including the plates, molds, or other means of producing the materials, which bear references to Trader's TRADER Marks, confusingly similar imitations of Trader's TRADER Marks, or to the <oldcartrader.com> and <rvtrader.com> domain names.

9. That Defendant be directed to file with the Court and serve on Trader, within thirty (30) days after entry of a final injunction, a report in writing under oath

18

setting forth in detail the manner and form in which Defendant has complied with the injunction.

10. That Plaintiffs be awarded their costs in connection with this suit, including reasonable attorneys' fees and expenses.

11. That Plaintiffs have such other and further relief as the Court may deem just and proper.

Judith A. Powell
Georgia Bar No. 586125
KILPATRICK STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
(404) 815-6500 (telephone)
(404) 815-6555 (facsimile)

Attorneys for Plaintiffs

19